IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KELVIN CARTER, #224 404 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:04CV104-MEF |
| | ) | [WO] |
| DONAL CAMPBELL, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Kelvin Carter ["Carter"], an Alabama prisoner incarcerated at the Draper Correctional Facility, filed this *pro se* 42 U.S.C. § 1983 action alleging that Defendants violated his constitutional rights by subjecting him to excessive force, by retaliating against him for complaining about the conditions of his confinement, and by conspiring to violate his constitutional rights. Carter demands trial by jury and seeks declaratory and injunctive relief and monetary damages against defendants James DeLoach ["DeLoach"], the Warden of Draper Correctional Facility; Donal Campbell ["Campbell"], former Commissioner of the Alabama Department of Corrections; Sergeant Tracey Smith ["Smith"], and Correctional Officers James Steele ["Steele"] and Thomas Richburg ["Richburg"].

In response to the orders of the court, defendants filed a special report and supporting evidentiary material in response to the allegations contained in the complaint. The court then informed Carter that defendants' special report may, at any time, be treated as a motion for summary judgment, and the court explained to Carter the proper manner in which to respond to a motion for summary judgment. Carter filed a response to the special report filed by the

defendants.

This case is now pending on defendants' motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof, and Carter's opposition to this motion, the court concludes that the defendants' motion for summary judgment should be granted in part and denied in part.

## I. FACTS

On 12 December 2003 at approximately 12:00 a.m., Carter finished the tasks associated with his job as third shift bathroom cleaner and asked Officer Richburg if he could take a shower. The cleaning agents he used to sanitize the bathroom were irritating his skin, and he wished to wash off the chemicals. Officer Richburg denied Carter's request and ordered him to bed. Carter, not being able to sleep because of his skin discomfort, asked to see a supervisor.

Officer Steele responded to the summons for a supervisor. He similarly denied Carter's request to take a shower. Carter alleges that Officer Steele then handcuffed him and pushed him out of the cell block and down a flight of stairs into the shift commander's office. Carter contends that Officer Steele then grabbed him by the neck and hit his head against a door causing him to sustain head injuries. Following this incident Carter asserts that Officer Steele ordered him to stand in a corner of the shift office where he remained until the shift changed at 5:45 a.m. Officer Richburg issued Carter a disciplinary citation on 16 December 2003 for his failure to obey the direct order of a correctional official on 12 December 2003.

Carter contends that he received the disciplinary and a job re-assignment in retaliation for asking to see a supervisor after Officer Richburg denied his request to take a shower on 12 December (Doc. No. 1.)

Carter maintains that the defendants' actions caused him to suffer head injuries, painful, irritated skin, the wanton infliction of pain, emotional trauma, and mental pain. He further maintains that the defendants conspired to deny him his rights secured by the First, Eighth, and Fourteenth Amendments to the Constitution, in violation of 42 U.S.C. § 1985 and failed to prevent such conduct in violation of 42 U.S.C. § 1986 (Doc. No. 1).

Defendants deny violating Carter's constitutional rights. Campbell states that he does not know Carter and had no personal involvement with the incident about which he complains, a fact that Carter does not challenge. (Doc. No. 12, Exh. H.)

Warden DeLoach denies violating Carter's constitutional right and denies knowingly allowing anyone under his supervision to violate his constitutional rights. He states that Carter did tell him that Officer Steele verbally and physically abused him on the morning of 12 December 2003. Warden DeLoach states, however, that he observed no sign of physical injury to any part of Carter's body. Upon investigation into the incident, Warden DeLoach did find that Officer Steele violated an administrative regulation by leaving Carter handcuffed in the shift office on 12 December 2003 with his face towards a door for two or more hours without justification. Officer Steele was disciplined for this conduct (Doc. No. 12, Exhs. C, D.).

Officers Richburg and Smith deny physically or verbally abusing Carter or seeing

3

anyone else abuse him in such manner. Officer Steele also denies verbally or physically abusing Carter at any time. He states that on 12 December 2003 he responded to #3 cell area after being summoned by Officer Richburg after Carter's failed to comply with orders that he get on his assigned bed. Finding Carter's conduct a threat to the security of the orderly running of the institution, Officer Steele placed him in handcuffs and told Officer Richburg to escort him to the shift office. Officer Steele remained in Carter's cell area for approximately five minutes to restore order before going to the shift office where he then allowed Officer Richburg to return to #3 cell area.

While in the shift office, Officer Steele attempted to reprimand Carter verbally. Officer Steele maintains that Carter responded to his attempted verbal reprimand in a hostile manner. Officer Steele then informed Carter he would remain in the shift office until he calmed down and was ready to comply with the orders of prison staff. Officer Steele asserts that the only time he touched Carter was when he removed his personal issue ADOC handcuffs from Carter's wrists and placed him in a pair of handcuffs from the shift office inventory. According to Officer Steele, by 3:15 a.m., Carter had become rational and calm, at which time he removed Carter's handcuffs and allowed him to return to his cell area (Doc. No. 12, Exhs. A, B, G.).

## II. STANDARD OF REVIEW

To survive Defendants' properly supported motion for summary judgment, Carter is required to produce some evidence supporting his constitutional claims. *See Celotex v.*

*Catrett*, 477 U.S. 317, 322 (1986). He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. A plaintiff's conclusory allegations do not provide adequate evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).

Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus. Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the evidentiary materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, entry of summary judgment is appropriate. *Celotex*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving party and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

### III. DISCUSSION

*A.    Absolute Immunity*

Although Carter sues the defendants in their official capacities, they are immune from

monetary damages.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).

Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities."  *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state officials entitled to Eleventh Amendment immunity when sued in their official capacities.  Thus, the defendants are entitled to absolute immunity from the claims asserted by Carter against them in their official capacities.

B.   *Individual Capacity Claims*

   1.   **Excessive Force**

Officer Steele argues that he is entitled to qualified immunity on Carter's excessive force claim.  The law of this Circuit, however, precludes a defense of qualified immunity in

6

cases alleging excessive force in violation of the Eighth Amendment because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation. *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002), citing *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986).

A qualified immunity defense is, therefore, not available when a plaintiff properly pleads the use of excessive force. *Id.* Carter has properly pled a claim of excessive force. Thus, the only question in this case is whether he has alleged facts sufficient to survive a motion for summary judgment. *Id.* Accordingly, this court will consider whether Carter's allegation that Officer Steele used excessive force against him, which the court must take as true for purposes of summary judgment, sets forth a violation of his Eighth Amendment rights.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)); *see also Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson,* at 7-8, 112 S.Ct. 995; *see also Whitley,* 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman,* 97 F.3d 499, 505 (11th Cir.1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount

7

> to a knowing willingness that it occur." *Whitley,* 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson,* 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-1301.

The *Hudson* court held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the prisoner does not suffer serious injuries. *Id*. 503 U.S. at 9; *but see Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). An excessive force claim "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327.) In *Hudson*, the Court did not define "*de minimis* use of force" but suggested that the degree of injury received is at least relevant to determining whether more than *de minimis* force was used. *Id.* at 10.

Carter contends that it was Officer Steele who escorted him to the shift office and did so by "aggressively pushing [him] down the stairs." (Doc. No. 19, Plaintiff's Affidavit at pg. 2.) When they arrived at the shift office, Carter asserts that because he "continued telling [Officer Steele] the cleaning chemicals were burning [his] skin[,] [Officer Steele] grabbed [him] by the neck with a tight grip and hit [his] head against the door causing [him] to feel lightheaded." (*Id*.) Carter maintains that he was handcuffed at the time these events occurred and states that he remained handcuffed for several hours while facing a door and with chemicals burning and irritating his skin. (*Id*.)

Carter also alleges that medical treatment was denied because there were no signs of physical injury and that he suffered for weeks before receiving treatment.[1] (Doc. No. 19 at pg. 3.)  It is questionable whether Carter suffered anything more than minor injuries as a result of Officer Steele's alleged conduct, but the injuries he received are only one factor for consideration.  While the absence of serious injury is relevant to an Eighth Amendment inquiry, it does not end this inquiry.  *Hudson*, 503 U.S. at 7; *Skrtich*, 280 F.3d at 1304 n.8, citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986);  *Smith v. Mensinger*, 293 F.3d 641, 649 (3rd Cir. 2002) (considering the *de minimis* nature of injuries is an issue of fact to be resolved by the fact finder based on the totality of the evidence); *Brooks v. Kyler*, 204 F.3d 102, 103 (3rd Cir. 2000) (holding that there is "no fixed minimum quantity of injury that a prisoner must prove that he suffered" in order to state an excessive force claim).  The court must also consider the need for the application of force, the amount of force exerted, the threat reasonably perceived by the official and any efforts to temper the severity of the forceful response.  *Id.*

In the instant case, Carter assets that Officer Steele utilized physical force against him for no apparent reason and while he posed no threat.  (Doc. No. 19, Plaintiff's Affidavit.) Officer Steele, however, denies Carter's allegations regarding a use of force and maintains

---

[1] In a supplement to their special report, the defendants submitted a copy of Carter's medical records made in August 2003.  These records show that on 24 August 2003 Carter submitted a sick call request complaining of his skin breaking out and itching severely.  On 25 August 2003 medical personnel noted a "flat acid-like rash" to Carter's chest and neck area. He received Selson shampoo and body wash and was told to use it twice a day for a fourteen day period. Health Services Administrator Aaron Bee affirms that Carter made no further complaints "concerning complaints [he] made on August 25, 2003." (Doc. No. 13, Affidavit of Aaron Bee, Plaintiff's Medical Records.)

9

that the only physical contact he made with Carter consisted of placing him in handcuffs. (Doc. No. 12, Exh. B.) When viewing the facts in the light most favorable to Carter, this court concludes that Officer Steele is not entitled to qualified immunity because Carter alleges facts sufficient to survive a motion for summary judgment. *See Skrtich*, 280 F.3d at 1301. Consequently, the motion for summary judgment with respect to the excessive force claim against Officer Steele should be denied.

### 2.    Defendants DeLoach, Campbell, Richburg, and Smith

It is undisputed that Warden DeLoach, Commissioner Campbell, Sgt. Smith, and Officer Richburg were not personally involved in the use of force about which Carter complains. That is significant, because the language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by a defendant and the alleged constitutional deprivation. *Jones v. Preuit & Mauldin*, 851 F.2d 1321 (11th Cir. 1988). There is no evidence demonstrating the requisite causal connection between his alleged injuries due to excessive force and the actions of DeLoach, Campbell, Smith, and Richburg.

To the extent that Carter maintains that DeLoach and Campbell are liable for the actions of a correctional officer due to their supervisory roles, Carter's constitutional claims are meritless. The law is well settled that a defendant cannot be held liable in an action brought pursuant to 42 U.S.C. § 1983 under the theory of *respondeat superior* or on the basis of vicarious liability. *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994); *Brown v.* Crawford, 906 F.2d 667, 671 (11th Cir. 1990); *Zatler v. Wainwright*, 802 F.2d 397, 401

(11th Cir. 1986). Accordingly, the court concludes that DeLoach, Campbell, Smith, and Richburg's motion for summary judgment on the claims of excessive force and *respondeat superior* should be granted.

### 3. Retaliation

Carter alleges that Richburg charged him with a disciplinary infraction and changed his job assignment in retaliation for complaining to Officer Steele on 12 December 2003 about denial of permission to take a shower.

To present a cognizable claim for retaliation under § 1983, a prisoner must demonstrate that (I) he engaged in a constitutionally protected activity, (ii) he suffered adverse treatment simultaneously with or subsequent to such activity, and (iii) there is a causal connection between the protected activity and the adverse action. *Donnellon v. Fruehauf Corporation*, 794 F.2d 598, 600-601 (11th Cir. 1986); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2nd Cir. 2004); *Morales v. Mackalm*, 278 F.3d 126, 131 (2nd Cir. 2002); *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

"[I]f a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one." *Id.* at 395. Carter's complaint to Officer Steele that Defendant Richburg would not allow him to take a shower did not constitute protected conduct because it was frivolous. *See Smith v. Campbell,* 250 F.3d 1032, 1037 (6th Cir.2001). Carter violated a legitimate prison regulation by failing to obey Officer

11

Richburg's direct order to go to his assigned bed rather than take a shower. The validity of the disciplinary is not at issue. Carter's complaint as well as the defendants' evidentiary submissions show that he failed to comply with Richburg's direct orders. Carter was found guilty of the rule violation at a disciplinary hearing, and the warden approved the finding. (*See* Doc. Nos. 1, 12 at Exh. A - Disciplinary Report, & 19.)

### 4. Conspiracy

Carter alleges that the defendants continued to retaliate against him for complaining about the conditions of his confinement[2] as part of a conspiracy to violate his First, Eighth, and Fourteenth Amendment rights in violation of 42 U.S.C. § 1985(3).[3] To state a claim of conspiracy to violate civil rights, "a plaintiff 'must show that the parties "reached an understanding" to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy.' *Bendiburg v. Dempsey,* 909 F.2d 463, 468 (11th Cir.1990), *cert. denied,* 500 U.S. 932, 111 S.Ct. 2053, 114 L.Ed.2d 459 (1991). . . . [T]he linchpin for conspiracy is agreement . . ." *Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir. 1992). Thus, in order for a plaintiff "to establish the

---

[2]Other than this conclusory assertion, Carter offers no facts in support of this claim.

[3]Section 1985(3) provides a cause of action for a conspiracy to deprive "any person or class of persons of the equal protection of laws." 42 U.S.C. § 1985(3). The Eleventh Circuit has held that "§ 1985(3) protects two types of classes: (1) 'those kinds of classes offered special protection under the equal protection clause, and (2) classes that Congress was trying to protect when it enacted the Ku Klux Klan Act.'" *Farese v. Scherer*, 342 F.3d 1223, 1229 n.7 (11th Cir. 2003) (quoting *Childree v. UAP/GA AG CHEM, Inc.,* 92 F.3d 1140, 1147 (11th Cir.1996)).

'understanding' or 'willful participation' required to show a conspiracy, . . . [he] must [produce] some evidence of agreement between the defendants. . . . For a conspiracy claim to survive a motion for summary judgment '[a] mere "scintilla" of evidence . . . will not suffice; there must be enough of a showing that the jury could reasonably find for that party.' *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990)." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283-1284 (11th Cir. 2002). Merely "stringing together" adverse acts of individuals is insufficient to demonstrate the existence of a conspiracy. *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).

The court has carefully reviewed Carter's pleadings and finds that there is a total lack of evidence to support his theory that the defendants conspired to violate his constitutional rights. Carter fails to present any evidence which demonstrates that the defendants "reached an understanding" to violate his rights or committed an "actionable wrong to support the conspiracy." *Bailey*, 956 F.2d at 1122; *Bendiburg*, 909 F.2d at 468. At best, his assertions are self-serving, conclusory allegations that fail to assert those material facts necessary to establish a conspiracy between or among defendants. *See Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984). Carter, therefore, fails to produce requisite evidence of a conspiracy and summary judgment should be granted in favor of the defendants on this claim. *Bailey*, 956 F.2d at 1122.

### 5. Failure to Prevent Violation of 42 U.S.C. § 1985

Carter alleges a cause of action under 42 U.S.C. § 1986 for the defendants' failure to prevent a violation under 42 U.S.C. § 1985. Carter's § 1986 claim depends upon the viability

of the underlying § 1985 claim.[4]  *See Davis v. Hudgins*, 896 F. Supp. 561, 571 (E.D. Va. 1995), *aff'd* 87 F.3d 1308 (4th Cir. 1996); *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1223 (9th Cir. 1990); *Levy v. City of New York*, 726 F. Supp. 1446, 1455 (S.D.N.Y 1989).  Because Carter's § 1985 claim is not viable, his § 1986 claim should be dismissed as well.

### IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motion for summary judgment filed on behalf of DeLoach, Campbell, Smith, and Richburg (Doc. No. 12), be GRANTED and the claims asserted against these defendants be DISMISSED with prejudice;

2. The motion for summary judgment filed on behalf of Steele with respect to Plaintiff's claims of retaliation, conspiracy, and failure to prevent a violation of 42 U.S.C. § 1985  (Doc. No. 12), be GRANTED and the claims asserted against Steele be DISMISSED with prejudice;

---

[4] 42 U.S.C. § 1986 provides:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case . . .

3. The motion for summary judgment filed on behalf of Steele regarding the excessive force claim (Doc. No. 12), be DENIED;

4. DeLoach, Campbell, Smith, and Richburg be DISMISSED as parties to this cause of action; and

5. The excessive force claim against Steele be set for a jury trial.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before **22 May 2006**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 8th day of May, 2006.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE